The next case we have this morning is 24-7019 United States v. Rocha. I would like to start off with the court's denial of acceptance of responsibility. I understand the rarity in granting acceptance of responsibility when a defendant has exercised his right to trial. After all, almost everybody who does not accept responsibility enters a plea and doesn't contest guilt. But Mr. Rocha went to trial and accepted responsibility for the crime that he was convicted of committing. And it was the government's fault that the case unnecessarily went to trial. How does, I'm sorry to interrupt you so fast, but how does the government's fault bear on the district judge's responsibility under 3E1.1 to decide whether the defendant had clearly accepted responsibility? Maybe he didn't have a chance, maybe it was his fault, maybe it was his colleague's fault. But whoever's fault it was, how does that actually matter on the question presented to the court? I think when we look at the commentary to the rule, I know I was looking at Gavin where when they addressed the defendants, the defendant was not one who falsely denies or frivolously contests the relevant conduct that the court determines to be true. I think that's something that the court takes into account. And I think if we flip that over onto the government's side, if the government takes a case to trial that does not need to go to trial, I think the government can also be responsible for the kind of waste of judicial resources that I believe that this particular provision is designed to prevent. In other words, a defendant who is guilty, doesn't have a defense, is going to plead guilty, can do so and get two points for acceptance. Did he offer to plead guilty? United States v. Collins, in that case, the defendant did that. Did this defendant offer at any point to plead guilty to involuntary manslaughter? No. Okay. That offer was never made.  And going beyond that, when I look at the record, as I read it, did Mr. Rocha, he did not stipulate any facts that would support involuntary manslaughter, did he? No. Okay. Did Mr. Rocha below cross-examine all witnesses except for one, right? I believe so. Okay. Well, in light of that, why is it Mr. Rocha, just like Mr. McGeehy, who in his case, his counsel also uttered words of concession and closing argument, and we found that to be inadequate. That was not sufficient to show that he actually accepted responsibility. If we're focused on involuntary manslaughter, and I've got some further conversation about that, but if we're focused on involuntary manslaughter, what basis was there for that, what he did do, which was just have his lawyer make comments about conceding. Why is that enough? Well, I'm not focusing on really what his lawyer said. I think if we look at the commentary, when a person goes to trial and accepts responsibility, we don't look at the things that the lawyer said during trial, necessarily. All right. Then what are you using to support the fact that he accepted responsibility when, in fact, we have cases like Smith that point out that this is the exception to the rule that you accepted acceptance of responsibility, which means you, your client, has the burden of showing that they should get it. What I'm asking you is what is there? Well, I think we have to go back. If you'll listen to the government exhibits 30, 31, and 32, those are recordings that were made, part of the statements that were actually made by Mr. Rocha the morning, I believe the morning that the offense was occurred, after he surrendered himself. He admitted to the police, he admitted to shooting his mother, he admitted to being intoxicated when he did so, he knew that the gun that he used was loaded, he remembers pulling the trigger, he knew that his actions caused his mother's death, Mr. Rocha admitted to being familiar with firearm safety rules and not following those rules. I would submit to this court that had he given some kind of a factual basis like this, had he had an opportunity to enter a plea to involuntary manslaughter, that this would have been more than sufficient to support the plea. He didn't offer to enter a plea, and the point I was trying to make is when I survey our cases, defendants have fallen down or lost when they have sought acceptance of responsibility when they've done far more than Mr. Rocha did. In Collins, the person offered to plead guilty, your client didn't do that. In McGee, the court pointed out that there was no stipulation made by the defendant as to facts that would support this offense that they agreed that they committed. And also, they pointed out that there was, you know, you related to the question of how much they contested the government's case. Well, if Mr. Rocha is in the business of cross-examining the witnesses, he filed a motion for judgment of acquittal, it's my understanding, too. Did he not? Only with regard to first degree murder. Well, alright, that leads us to this question. When you look at Collins and when you look at Smith, they both were lesser-included offenses. They did not focus on acceptance of responsibility for the offense they were convicted of. They focused on acceptance of responsibility for what the person was charged with. When they went to trial, did they contest the intent of what they were charged with? In this case, what he was charged with was murder. And when he went to trial, at least my reading of the record is he full-on contested the intent of murder. And that was my understanding, based on Collins, where the defendant went to trial and contested the intent to distribute the controlled substance. And the same in Smith. So my point is, both of those cases suggest that the lens that we should be viewing this through is not what he was ultimately convicted of, but what he went to trial and faced. And in particular on the question of the mens rea or the intent associated with that. And if that's true, then it seems to me that we're in a different situation, because we've got to talk about whether Mr. Rocha actually contested the intent for his charge, which was murder. Well, it was my understanding from reading Collins that that was okay, for Mr. Collins to go to trial and contest the intent. And in fact, had he, at the time of his arrest, acted differently, it might have been a different case. But Mr. Collins, at the time of his arrest, in spite of the fact that there was a tape recording of him admitting that he knew where the drugs were, that they were his drugs, he denied that the drugs were his at the time of his arrest. He blamed the police officers, I think, for planting the drugs at the time of his arrest. He ran, tried to flee the scene, and had to be apprehended and brought back to the scene. And it was the court that focused on that, not the acceptance. He came back voluntarily, didn't he? I don't think so in Collins. Oh, in Collins. Yes. Well, there were variables in Collins that resulted, no doubt, in the denial of the acceptance of responsibility. My broader point is this. When you look at Collins and when you look at Smith, what the court focused on is the broader charge in determining whether you actually resisted or accepted responsibility. In this instance, that would mean that we're not just focused on the question of whether he admitted involuntary manslaughter, which again, as I point out, we have cases where the defendant seemed to have done far more than Mr. Rocha did. But beyond that, we're not just focused on involuntary manslaughter. We're focused on he went to trial. He was charged with a murder. If you look at Smith in particular, who got the lesser included, we focused on the fact that he challenged intent. And to that point here, at least, and correct me if I'm wrong, my reading of the record is key facts going to intent, like did he point the gun at his mother? He says, no, I didn't point the gun at my mother. That was the government's narrative. Did the gun go off accidentally? That's his position. That's not the government's position. And so these were key facts that would go towards a question of intent of what he was charged with. And in fact, they would go to the question of intent as to what he was charged with, and he contested those. Your Honor, and I don't want to read all of the transcript, but I did, I think, quote a lot of the transcript in my reply brief when I objected to the government's description of what he was doing when he made some of those statements. I mean, I do believe that when he was being examined by the government, he did initially perhaps say, I didn't point the gun at my mother like that. I don't know what the gesture was. I think he ultimately conceded, obviously, he was pointing the gun at his mother when the gun went off, because that's what happened. I believe that he was being careful not to admit that he had intentionally shot his mother, because that's what this case was all about, was that he did not intentionally shoot his  He did not act with malice of forethought. He certainly did not act with premeditation. And he was defending on that basis. Now, you mentioned something about him not offering to plead. I know it's not part of the record, but there was some negotiations with regard to second degree murder in this case, where he offered to plead to second degree murder had the prosecutor been willing to dismiss the 924C count. But it isn't part of the record, so we're not in a situation to consider it. As you, just as I understood you anyway, I understood you to say that he, in fact, contested malice of forethought and these other things. Well, if in fact Smith tells us that what we're looking at is did you contest the intent of the charge, then the fact that he did try to challenge malice of forethought tells us all we need to know about whether he's entitled, whether the court was right on the denial, which is that it would support that denial. Judge, I disagree. Do you, all right, then tell me, do you look at Smith differently? If you look at Smith, what was his defense? His defense was self-defense. His defense was that he did nothing wrong. If he actually was found to be acting in self-defense, that would be, he'd be asking for a not guilty verdict. And I would submit that based on Mr. Roach's conduct, based on Mr. Roach's statements, that's not the position that he was in. In fact, if you look at the statements from his attorney, I believe when the attorney went down and offered the defenses, you know, to first degree, second degree, voluntary manslaughter, he ended by telling the jury that involuntary manslaughter, that sure looks like what this is, you know, short of actually stipulating and he did everything possible. Well, that's what the defendant did in McGeehy and he didn't get, he got denied and we took some effort to point out in McGeehy what he could have done and he did not do. And those same things that he could have done and did not do is exactly what Mr. Roach did not do. Judge, I don't, I don't remember exactly. I went through dozens of these cases. No, I understand. And frankly, I found this to be unique, I think, in the way that this case went down, this trial went down. So I don't think that there's really any precedent. I mean, I know attorneys like to cite Gavin, you know, for precedential authority. I know it doesn't work that way, but I won't, I won't go down that path, but I don't think that there's any authority that says that, you know, for example, that Mr. Roach would have had to have accepted responsibility for first degree murder in order to get acceptance of responsibility. I think we didn't be in a situation where the government would be an entirely, you know, they'd be in the driver's seat, they'd be in control, they'd be the ones to determine whether or not acceptance of responsibility was appropriate based on their charging decision. And that's why I started out with assessing fault with the government, because I do think it makes a difference in this case. And if I could just very briefly talk about, I did want to also argue that the upward variance was unreasonable. If I could spend just maybe a minute on that before reserving my time. I think that if you look through the record, you can see that we start out with a judge that didn't like the verdict. Significantly, I thought it was quite remarkable, the judge's reaction to the jury verdict, the fact that the judge was willing to send the jury back to the deliberations room to further deliberate in spite of the fact that there was a clear guilty verdict for involuntary manslaughter. I found that to be remarkable. I know that the fact that this was found to be a reckless event, I know that the fact that the guidelines also speak to the fact that it's a reckless event. That doesn't necessarily prevent the judge from varying upward. But I think this particular provision in the guidelines, 2A1.4, is very specific. It provides 12, if the conduct is criminally negligent, provides for a base offense of 18 if the conduct is reckless, which includes just about all of these offenses, according to the committee, or 22 could have gone higher if the conduct involved was the reckless operation of a motor vehicle. Add to that the fact that the commission in 2003 had actually increased the guideline level for this particular one to 18. So it was already high, which to my way of thinking makes the judge's decision very upward all the more unreasonably. What do we make of the fact that the judge did not vary all the way up to the statutory maximum and well under what the statutory maximum is? I mean, if animating your argument to some extent, maybe I misunderstand it, is the view that the judge was, you said, upset by the verdict and was essentially trying to, well, punish fully the defendant. Well, he didn't punish fully the defendant because he didn't go up to the statutory maximum. No, it certainly would have been a better case had he done so. I think he was, well, I tell you what, I have to think, I have to assume, because he really didn't state how he got to the 60 months, did he? There's nothing in the record to show how he got there. I don't think I have any time to reserve any more. Thank you, counsel. May it please the court, Patrick Flanagan on behalf of the United States. Your honors, the district court sentenced the defendant to a term of imprisonment that was procedurally and substantially reasonable, and this should be affirmed. The district court began its sentencing as it must by calculating the guideline range. In doing this, it received the arguments of counsel on whether the defendant was entitled to a reduction under the guideline section 3E1.1A for a two-level reduction. The district court recognized that it could, under 3E1.1A, despite going to trial, give acceptance of responsibility. It decided not to. It laid out its reasons, it had the arguments of counsel, it had the evidence at trial, it had everything in front of it it needed, and recognized its authority and refused to do so. This was not clear error, and that is the standard of review for the district court's denial of acceptance with responsibility. Well, your position in the brief, if I understood it, was that he never admitted to the conduct that rose to the level required for involuntary manslaughter. Well, he confessed and testified that he unintentionally shot and killed his mother in what he described as a, quote, horrible accident, unquote. Why isn't that admitting to the factual elements of involuntary manslaughter? Your Honor, as the district court noted, admitting something is an accident isn't admitting that it's reckless, and the mens rea and standard for involuntary manslaughter is reckless and one disregarded. Well, he said in Exhibit 30 that not only was he drinking a lot, but that he was unable to control himself. And it's true that he didn't use the word reckless, but why isn't it obvious that what he immediately told the officers once he was interviewed was the equivalent, I was drunk, I was unable to control myself, I had to have Johnny and my girlfriend try to control me, they couldn't do it. Why was that not enough for a prompt acknowledgment of what a layperson would call reckless? Well, Your Honor, there was also further conduct of the defendant in the record, including his flight from the scene, his flight from the state. Those are under application note, I believe, 1 of 3E1.1, things to consider. The judge weighed all of those and noted that he weighed all of those, and ultimately coming to his conclusion that an acceptance of responsibility in this case was not applicable to the defendant's guideline range, and that was not clear error by the district court and should not be upset by this court. As I noted, an accident does not equal reckless. We did have to go to trial, and regarding the opposing counsel's point about the judge asking about the jury's verdict, it should be noted that the jury verdict form for count 1, the primary charge defense, the lesser-included offense of second-degree murder, and voluntary manslaughter were not filled out by the jury before returning a guilty verdict to the lesser-included involuntary manslaughter. Why does that make any difference? Just noted that they weren't filled out of guilty or not guilty, and it could have been a point of inquiry from the judge, just making sure that there wasn't more work for the jury to do. What did we do with Mr. Roach's, with the standard of review list, or Mr. Roach's procedural reasonableness arguments? It wasn't clear to me that you're claiming lack of preservation as it relates to any of those arguments. I mean, I didn't see that in your brief. Am I wrong about that? I did not have that in the brief, Your Honor. My contention was that the procedure was correct, the district court correctly calculated the guideline range, then moved on to considerations of the 3553A factors as it must, it weighed those factors. I know in the opposing counsel's brief, one of the things they wanted to bring up was the what does society expect question that the district court judge posed, but that was in response to a statement by defense counsel during his argument of, Judge, you have to look at what society expects. Well, so you're arguing invited error. I'm not sure that's what the defendant had said. Well, Your Honor, in the record, the... You're saying he clearly invited the judge to apply the 3553A factors based on what society would expect him to do for this defendant. Your Honor, that was part of the argument, but one of the questions, or the question that opposing counsel posed during sentencing was what does our society value? My argument, I think, went more to the district court's brief comment in its statement of sentencing about what society valued was in response to that question. So, yeah, so societal values that are 3553A2A, retribution, punishment, those are values. How does that invite the judge to then impose what the judge thought society expects him to do? Well, it went to whether the district court exercised its discretion and weighed the 3553A. Yeah, and I understand your argument on the merits. I was just a little skeptical of your invited error argument, so I wanted to give you a little bit of skepticism. Well, Your Honor, the district judge exercised his own discretion. He did make the comment, but from the hearing, it was more apparent that that wasn't the weight for his weighing of the 3553A factors. It was a statement in the direct response to counsel. What about the separate argument that Mr. Southerland makes about the procedural unreasonableness of failing to adequately explain why the judge buried upward 27 months? You know, with departures, with White, Skonk, and Goldberg, we have very specific precedents saying that a judge has to explain in the context of a departure, which is different, you know, why the circumstances would justify imposing a particular guideline range through an upward departure. And granted, we have more flexibility to the judge with variances, but how can we meaningfully evaluate the judge's decision that he fled, that he ditched the gun, that that justified a 27-month upward variance? If you were the judge, how would you apply the abuse of discretion standard? Your Honor, I believe the district court applied the weighing, and he formed a sentence that wasn't the maximum. It wasn't eight years. He didn't give him an illegal sentence. It was within the range that was available to the court. Yeah, I'm not questioning substantive reasonableness. I'm just questioning how we evaluate the reasonableness of the procedures that he employed to get to a particular guideline range. Well, Your Honor, I would submit he obviously weighed the factors. He laid out what was important to him in coming to his sentence. He did indicate before the hearing he was inclined to depart upwards. Everyone knew that going into the sentencing. Everyone presented arguments regarding the court's upward intentions to vary, and then made their arguments, and the district court judge, the sentencing judge, laid out what was important to him in the 3553A factors more than the others, and in his discretion said, I'm giving you 60 months, you will get out one day, the moral component will be left to you, but this is outside the ... Essentially, what he was saying is this is outside the ordinary realm of the guideline range and what it says, and this is what it is based on my weighing of the 3553A factors, and these are the specific facts. The evidence of trial, the evidence of flight, the discarding of the firearm, and the drunken flight from the state were all important factors to him and are clear in the record as he so stated. But then he came back and told him where the gun was, right? Voluntarily came back to his father fairly rapidly. He did, after fleeing the state, he was convinced to return. I wouldn't know ... He fled the state because he wanted to talk to his father who happened to be 90 miles away across the border in Texas from where he was in Oklahoma. That was his claim, yes. What sentence did the government argue for? Your Honor, we argued that a sentence of at least the guideline range was appropriate. We argued against the downward variance. And the guideline range was? The guideline range ... I'm going something off memory because I don't have it in front of me. 27 to 33? Yeah. Something like that. But we argued that the guideline range should be the floor of the sentence and not the ceiling the district judge weighing his discretion agreed, and very awkward. I would note that in the record there was also evidence of a phone call between the defendant and his girlfriend where he said that the death was his mother's fault and not his. That was testified to by the girlfriend. That was also testified to ... But there was evidence that he was after his stepfather and his mother, Henry V. Isn't that what he's talking about? It's her fault because she got in my way. But he did make the statement, we didn't inquire too closely of him during cross-examination of what his reason was. He was, by the record, reluctant to make admissions on that point and the memory of the girlfriend when it came time to testify about that was not firm. And we weren't allowed to admit the recording of the evidence even though it was submitted to the court for prior consideration. The sentence was reasonable. It was procedurally and substantially reasonable. We would ask that it would be affirmed. There were a number of facts warranting an upward variance that the defendant was twice disarmed before picking up a third loaded firearm. He had to cock the single action revolver before it could be fired and shot and killed his mother. There was testimony pointed at her twice. Wasn't there evidence that the trigger moved faster than the ordinarily triggered does? There was evidence of a light trigger pull based on the defendant's expert who was allowed to testify. However, it was also made apparent that in order for that trigger to pull and fire, it had to be cocked first and no one testified that it was easy to do, but it was a separate action that had to occur before the light trigger pull would have any effect. There was also the evidence that the defendant intended to use the firearm on his stepfather and had to be, again, twice disarmed before sneaking out a third firearm. The defendant's flight, his intoxication during the flight, and blaming the mother for the shooting, which was at the trial transcript at page 342. All of these go to the exercise of the sentencing court's discretion and the reasonableness of its sentence, and we would ask that it would be affirmed, unless there are any other questions. The defense would not be able to rest tonight. Thank you. Did the judge say that this was a closed call? He did say it was a closed call with regards to whether he would give acceptance of responsibility or not. He ultimately decided not to, and he also, in varying upwards, said if he was wrong about this, this was still the sentence he was going to give. Thank you, counsel. Thank you, Mr. Stoeglein. Mr. Stoeglein, if you want a minute, you can have a minute. I'm guessing he wants it. Just wait until they set the clock. Judge, first of all, how is a 21-year-old man going to accept responsibility or explain what happened? Are they going to call this an accident? Is he supposed to say, when he was initially interviewed by law enforcement, that my behavior was reckless and wanton? I have to look up wanton to see what the definition is when I read it in new jury instructions. Be that as it may, is he supposed to say that he's grossly negligent? Was he supposed to use those words? He described his conduct, and that's the important thing. The application doesn't really talk about fleeing. I think it's interesting that the judge in this case did not even do a flight instruction. The actual statement in the committee notes is that prompt surrender is the key, and he promptly surrendered. In fact, before he surrendered, they called ahead to say he was coming. So I don't believe that flight is an issue in this case. I'd like to mention just for a second his mother's fault. If you'll read what the judge's interpretation of that is, that was not the judge's interpretation. The shooting was the mother's fault. All right. The case is submitted. Thank you, counsel, for your arguments. Thank you.